Domingo Fernández Martínez et al., Petitioners and Appellants, *v.* María Teresa Martínez, Respondent and Appellee.

No. 8357. Argued November 26, 1941.—Decided December 2, 1941.

*F. Prieto Azúar* for appellants. *F. García Quiñones* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

José Fernández contracted a third marriage, with Teresa Martínez, 18 years of age, in December 1934. They had a child whom they named Edgardo, and when the latter was one year old, about May 1936, his mother was compelled to sue her husband for support of the child, as the husband had deserted them. Fernández was sentenced to pay to his son a monthly allowance of $40 and a motion for reconsideration filed by him was denied. Subsequently, María Teresa Martínez obtained a divorce decree against José Fernández, whereby she was awarded the care and custody of the child of the marriage.

On October 3, 1940, María Teresa Martínez filed in the lower court a motion praying that her former husband be summoned to show cause why he should not be punished as for contempt of court, he having failed to comply with the terms of the judgment of support. It was alleged in said motion that he had reduced the allowance to $30, $25, and $20 on various dates. The defendant was summoned, and before his appearance the parties submitted a stipulation for the approval of the court by virtue of which Fernández undertook to continue to pay the allowance for his son at the rate of $30 monthly, payable in two instalments of $15 each every fifteen days. The stipulation was approved on October 10, 1940.

On November 1, 1940, José Fernández joining his father Domingo Fernández as copetitioner, filed in the lower

court a petition for a writ of *habeas corpus* directed to María Teresa Martínez, seeking, as stated in the prayer, "that she should show cause, if any, why she should not be deprived of the *patria potestas* over" her son "in accordance with Section 166 of the Civil Code of Puerto Rico and by virtue of which she should reinstate said minor to the custody of his paternal grandfather", and "finally that the said minor should be placed under the custody and care of petitioner Domingo Fernández Martínez." The petition is mainly based on the allegation that the respondent is living in concubinage with another man in the same house with her son Edgardo, and that the respondent, in April 1940, gave birth to a natural female child which she registered as such in the Registry of Vital Statistics, such examples tending to corrupt the minor. It is further alleged in the petition that the respondent often moves from place to place, living with the minor in small and close rooms, unhealthy and scantily aired, with the result that the said minor has become pale and sickly and attends school irregularly if at all. It is further alleged that the petitioner Domingo Fernández Martínez, paternal grandfather of the minor, is a sober and circumspect person and has material, moral, and financial qualifications enabling him to better attend and look after the said minor.

The respondent in her answer denied that she is at present living in concubinage with another man but admitted that she had given birth to a natural female child whom she registered in the Registry of Vital Statistics. She also denied the other allegations of the petition.

After the proper hearing, the lower court denied the petition, and it is from that decision that the petitioners have taken the present appeal, in which they assign the following errors:

"*First error.*—The court *a quo* was moved in the instant case by passion, prejudice, and partiality against the plaintiffs and appellants,

in basing its findings on unproved facts, as, for instance, that petitioner José Fernández had acted moved by a desire to evade the payment of maintenance and support for the minor, and in resting its conjectures on actual or probable inquiries out of court, without affording the appellants an opportuniy to intervene in the same.

"*Second error.*—The court *a quo* committed manifest error in allowing the respondent and appellee, over the objections of the petitioners and appellants, to bring such a serious charge against petitioner José Fernández as that the latter had repudiated his paternity of the minor, relying on an alleged letter which was not produced in evidence and which had greatly influenced the mind of the trial judge in denying the petition.

"*Third error.*—The court *a quo* committed grave error in denying the petition in the instant case, notwithstanding the immoral conduct of the respondent and appellee, obviously injurious to the welfare of the minor, and notwithstanding the opportunity available to the latter, of living in a wholesome and moral home.

"*Fourth and last error.*—The lower court erred and abused its discretion in adjudging the petitioners to pay the costs, and, especially, to pay attorney's fees."

██ The basis for the first assignment is an incident that took place at the commencement of the hearing in the lower court when the respondent moved that one of the witnesses who had been unable to appear be summoned to appear at another time. As appears from page 2 of the transcript of record, the following occurred:

"Judge: Then we will hear that lady's testimony on Monday at 9 a. m.

"Petitioner: And we shall be entitled to submit evidence regarding her testimony.

"Judge: *Yes, and the court, in similar cases, has powers to make investigations out of court.* Let us hear the evidence for petitioners." (Italics ours.)

The appellants maintain that, according to the foregoing italicized remarks, the lower court decided the case relying on investigations made out of court and, therefore, that the due process clause of the 14th Amendment to the Federal

Constitution and of Section 2 of the Organic Act of Puerto Rico were violated by the court *a quo*.

It is true that the lower court expressed itself in the way already stated, but there is nothing in the statement of the case and opinion delivered by it in support of its decision to show that it made an investigation out of court. Of course, although the powers and discretion of the courts as *parens patriae* are, under the law and the decisions, very broad, and said courts are not bound to strictly adhere to the rules of evidence in similar cases, such powers and discretion can not be exercised in violation of the constitutional rights acknowledged to all the parties to an action. In 46 C. J. 252, sec. 30, under the heading "Parent and Child," the general applicable doctrine is stated thus:

"Although the general rules as to admissibility of evidence are ordinarily applicable in proceedings to determine the custody of a child, a wide latitude of examination is allowable on the issue of a parent's fitness to have the custody of the child."

Further on, in section 32, it is said:

"The court which hears the case should satisfy itself whether the child is improperly restrained and whether its comfort and education are properly attended to. The court is not restricted to the ordinary modes of trial, or bound down by any particular form of proceeding; but it may direct that the child be brought before it and may examine it privately, and may also avail itself of affidavits or other reasonable and proper sources of information."

In note 54 on the same page, citation is made of the case of *State* v. *Thompson*, 117 La. 102, 41 So. 367, where it was held that in an action for the custody of a minor a divorce decree that had been alleged in the petition but which had not been introduced in evidence could not be considered when determining the issue.

In *Cooke* v. *Cooke*, 248 P. 83, cited by the lower court for a different purpose, it was held that the transcript of evidence and an opinion of the judge in connection with a de-

cree or judgment rendered by a Canadian court were not admissible in evidence in Utah, where the same were not duly authenticated nor did they form part of the judgment roll in said case. The court said:

"The opinion of the judge or court so offered in evidence is not included in such transcript, nor certified to by the registrar; nor is it in any manner therein referred to; nor was it ever filed with the registrar or in his office; nor did it ever become a part of the records of the court; nor was it ever in the custody of the registrar; nor was it ever attested by him; nor was the seal of the court annexed thereto. That also was true with respect to the transcript of the evidence which also was certified to only by the official stenographer. . . .

"We are therefore of the opinion that the referee correctly excluded the offer of such evidence, and that we may not properly notice or consider it, and that all there is properly before us for consideration . . . is the judgment roll as hereinbefore referred to and as certified to and attested by the registrar of that court."

In our opinion the prevailing rule should be that, although it is conceded that district courts have a wide discretion to inquire into everything best promoting the welfare of a minor and that they should liberally construe the rules of evidence serving that end, this does not mean that they can make private inquiries behind the back of interested parties and without giving them an opportunity to intervene in such inquiries, in order to examine or cross-examine the witnesses and to introduce any evidence that they may desire. A case might arise where certain facts might come to the knowledge of the court that should be investigated before finally passing upon the custody of the minor. Such an investigation can and must be made although with the intervention, as recognized by law, of the parties to the suit.

The grounds relied upon by the lower court for denying the petition are set forth in the statement of the case and opinion, thus:

554

"It is a well-settled principle that in this kind of proceedings the controlling question is the welfare of the minor. *Llopart v. Mesorana,* 49 P.R.R. 242; *Chabert v. Sánchez,* 29 P.R.R. 225. Where minors of tender age are involved, as happens in the instant case, facts really exceptional and extraordinary should 'be alleged and shown in order to deprive their mother of their custody, especially where she has been awarded by final judgment the custody of the minor involved. See *In re Pryse,* 41 L.R.A. (N. S.), pp. 575–578.

"The evidence failed to show at all that the minor was living in small, closed, unhealthy, and poorly ventilated rooms and still less that he was pale and sickly. As to his not attending school, judicial notice is taken of the fact that children are not admitted in the schools until they are seven years of age.

"Although it has been admitted by the defendant that she had lived in concubinage with another man by whom she had had a female child, it is a fact that at the time of the trial she was leading a decent life and had already ceased living in concubinage. Her ex-husband's own sister, with whom respondent was living, testified that her conduct was irreproachable and that she attended and took care of the child very well.

"Although we do not approve of respondent's conduct, we think that, under the circumstances of the present case, the welfare of the minor demands that he be kept under the custody and protection of the mother, in spite of her illicit relations.

"  *       *       *       *       *       *       *

"Moreover, we are convinced that the illicit relations were discontinued and that the respondent, according to the own testimony of the sister of the former husband, petitioner herein, is now observing good conduct and looks after her son whom she loves.

"Under the circumstances, we must maintain the *status quo* and refuse to deliver the child to persons, who, although relatives, are not in a better position than that of a stranger. The father himself has been coerced by judicial proceedings into providing support, and the mother, whose testimony we believe, has stated that he never calls to see the minor. The paternal grandparents, under whose custody they seek to place the child, do not know him and have never shown their love for him. We are moreover convinced that the present *habeas corpus* proceeding has been instituted for the sole purpose of evading the obligation to furnish support, imposed by the judgment in civil case No. 25237. It should be observed that in October, 1940,

the plaintiff in said case filed a motion to punish the petitioner herein for contempt for his failure to comply with the order of the court compelling him to furnish support; the order to show cause was set aside by virtue of a stipulation of the parties effected on October 9, 1940, and before the lapse of a month the present *habeas corpus* petition was filed, although it was eight months since the respondent had given birth to a child and her love affair had already terminated. It is well settled that where improper motives and not the love for the child is the cause of the institution of the *habeas corpus* proceeding the writ should be denied. Nor are we going to disturb the *status quo* and embark the child upon a new venture by delivering him into the hands of unknown people who can not have for him the love and affection which up to the present has been lavished on him by his mother and aunts with whom he occasionally lives for a while.'"

We have carefully examined the whole evidence introduced at the trial and the same amply supports the conclusions reached by the lower court, and it can not be maintained that any additional evidence was obtained out of court. The lower court, in accordance with the facts proved and which we have stated at the beginning of this opinion, was justified in its finding that José Fernández in filing the *habeas corpus* petition was actuated by his interest in evading the payment of maintenance and support for the minor. Those facts are subject to that inference or construction without the necessity of making inquiries out of court. The first error assigned was not committed. Nor was the second error committed, either, for the lower court did not base its judgment, as appears from the opinion above transcribed, on the fact that the father had repudiated the paternity of the minor. There is nothing in the case to indicate that the statements she was allowed to make in connection with the letter which, according to her, she had mislaid, had influenced the mind of the trial judge in denying the petition.

The third assignment attacks, from a different angle, the weighing of the evidence by the lower court when denying the petition, and the exercise of its discretion as *parens patriae,* leaving the minor in the care of his mother, notwith-

standing the latter had admitted her illicit relations that resulted in the birth of her natural female child.

The evidence showed that those illicit love relations had terminated many months before the filing of the petition and that her ex-husband's sister, with whom respondent was living at the time of the trial, testified that she was behaving properly and took care of her son. It is true that the latter's husband contradicted her. The court below, however, did not believe his testimony. We further concur with the lower court in its conclusion that, as appears from the evidence, "the paternal grandparents, under whose custody they seek to place the child, do not know him and have never shown their love for him" and that, under those circumstances, "the *status quo* should not be disturbed either or the child embarked upon a new venture by delivering him into the hands of unknown people who can not have for him the love and affection which up to the present have been lavished on him by his mother and aunts with whom he occasionally lives."

We are of opinion that the lower court, after considering the evidence as a whole and the facts of the case, properly used its discretion in maintaining the *status quo* and leaving the minor under the custody of the mother, and likewise in adjudging the petitioners to pay $50 as attorney's fees; and, therefore, that the judgment appealed from should be affirmed.